UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 0865 4:20CR00387-1 SEP |
| | ) | |
| WESLEY KIMBLE, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM

COMES NOW Defendant Wesley Kimble ("Defendant" or "Kimble"), by and through undersigned counsel, and hereby submits the following memorandum for sentencing:

**I.      Background**

On November 2, 2021, Defendant Wesley Kimble pled guilty to one count of a two-count Indictment. *See* Presentence Report ("PSR"), ¶ 1. Count 1 charged Travel with Intent to Engage in Illicit Sexual Conduct in violation of 18 U.S.C. § 2423(b). *Id.*

The parties have agreed that the United States Sentencing Guidelines ("USSG") Total Offense Level analysis, agreed to by the parties, is the result of negotiation and led, in part, to Defendant's guilty plea. PSR, ¶ 4. The parties have further agreed that either party may request a sentence above or below the guidelines range ultimately determined by the Court, pursuant to any chapter of the guidelines and 18 U.S.C. § 3553(a). *Id.*

The parties have agreed that the Base Offense Level is 24, as found in USSG §2G1.3(a)(4) of the 2018 Guidelines Manual. *Id.* The parties have agreed that two levels should be added pursuant to USSG §2G1.3(b)(3)(A) because the offense involved the use of a computer or an interactive computer service to persuade, induce, entice, coerce, or

facilitate the travel of the minor to engage in prohibited sexual conduct. PSR, ¶ 5. The

parties have further agreed that two levels should be added pursuant to USSG

§2G1.3(b)(4)(A) because the offense involved the commission of a sex act. *Id.* Pursuant

to a written plea agreement, the Government will recommend a three-level reduction for

acceptance of responsibility, which is conditioned upon Defendant clearly demonstrating

acceptance of responsibility for the offense. PSR, ¶ 6. The parties calculated a Total

Offense Level of 25, based in part on several agreed calculations. PSR, ¶ 9. The PSR,

however, reaches a substantially different calculation of the Total Offense Level based on

application of a five-level enhancement under USSG §4B l.5(b)(1) that was not included

in the parties' agreed guideline calculations.

Defendant Kimble respectfully submits that a sentence of 50 months

imprisonment will best serve the statutory purposes of sentencing here.

## II.     Sentencing Rules

Title 18 U.S.C. § 3553(a) requires this Court to impose a sentence sufficient, but

not greater than necessary, to comply with the purposes of sentencing. There are four

purposes of sentencing[1] and six factors to consider in connection with them.[2] The

---

[1] The purposes of sentencing are:

     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
     (B) to afford adequate deterrence to criminal conduct;
     (C) to protect the public from further crimes of the defendant; and
     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. §3553(a)(2)(A)-(D).

[2] The factors to consider in connection with the purposes of sentencing are:

     (A) the nature and circumstances of the offense and the history and characteristics of the defendant;
     (B) the kinds of sentences available;
     (C) the guidelines promulgated by the Sentencing Commission;

guidelines are only one factor to consider and deserve no greater weight than any other factor. *See Kimbrough v. United States*, 552 United States 85, 90 (2007). Thus, this Court may not presume a sentence within the guideline range as reasonable. *See Rita v. United States*, 551 United States 338, 351 (2007). Nor may it presume a sentence outside the guideline range unreasonable. *See Gall v. United States*, 552 United States 38, 51 (2007). Furthermore, this Court may not require "extraordinary circumstances" to justify a sentence below the guidelines nor "use a rigid mathematical formula to determin[e] the strength of the justification required for a specific sentence." *Id.* at 47. These rules apply regardless of whether the guideline derives from the United States Sentencing Commission ("the Commission") or a policy determination of Congress. *See Kimbrough*, 552 United States at 109-10.

### III.    Kimble's History and Characteristics

Defendant Wesley Alexander Kimble was born in 1997 in Chicago, Illinois, to Jeff Kimble, age 51, and Denise Kimble (nee Beardsley), age 51. PSR, ¶ 50. Defendant's parents have been married for almost 29 years and currently reside in the St. Louis Metropolitan area. *Id.*

Defendant is single, has never been married, and does not have any children. PSR, ¶ 51. At the age of one, Defendant relocated to northern California. At the age of two, Defendant relocated back to Chicago. Defendant relocated to Fenton, Missouri, with his family in 2001. All moves were related to Defendant's father's job. PSR, ¶ 52.

---

(D) any pertinent policy statement issued by the Sentencing Commission;
(E) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and
(F) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(1)-(7).

Kimble is six feet, one inch in height and currently weighs approximately 330 pounds. PSR, ¶ 53. *Id.* Prior to his going into custody in this matter, he weighed approximately 225-240 pounds. The extent and speed of his weight gain in custody raises substantial concerns regarding the possibility of adverse health effects.

As substantiated by records provided by Defendant's family, at the age of two, Defendant slipped and fell at a bowling alley in Highland Park, Illinois, and was treated for a severe concussion he suffered from the fall. PSR, ¶ 54. In the fall, his head impacted by the bowling ball and by the floor of the bowling alley. At the age of 14, Defendant also was diagnosed with a concussion while playing football and was treated by Dr. Matt Bayes in St. Louis, Missouri. PSR, ¶ 56.  Defendant observed that he suffered other, repeated concussions and other repetitive head trauma in playing football from his childhood through high school.

While incarcerated at the St. Louis County Jail ("SLCJ") in St. Louis County, Missouri, Defendant was diagnosed with anxiety and prescribed Buspar and Trazadone. PSR, ¶ 57. While at SLCJ, from August 2020 to May 2021, he spent the majority of his time in what was largely solitary confinement, as he was isolated in a cell often without an assigned cellmate for more than 23 hours a day. The solitary confinement was primarily due to COVID protocols. Defendant has been prescribed Buspar while currently incarcerated at Ste. Genevieve County Jail in St. Genevieve, Missouri. *Id.* Kimble experienced suicidal thoughts as a teenager but does not have any current suicidal thoughts or ideation. PSR, ¶ 58. The PSR reflects that Defendant may benefit from participating in mental health treatment during any period of incarceration or while on supervision. PSR, ¶ 59.

Defendant first consumed alcohol at age 16 and last consumed alcohol in 2017, which he only consumed in social settings. PSR, ¶ 60. Kimble first smoked marijuana at the age of 14 and last smoked marijuana the day he self-surrendered. *Id.* He smoked marijuana daily prior to his incarceration. *Id.* Kimble first and last used mushrooms in 2019. *Id.* Kimble used LSD every Sunday, as it was a "spiritual experience" for him, and the last time he used LSD was the day he self-surrendered. *Id.*

Defendant has no history of treatment for substance abuse. PSR, ¶ 61. Defendant may benefit from participating in substance abuse treatment or education during any period of incarceration or while on supervision, and he may benefit from placement in the Residential Drug Abuse Program ("RDAP") while incarcerated. PSR, ¶¶ 61,62.

Defendant graduated from Fox High School in Arnold, Missouri, on May 17, 2015. PSR, ¶ 63. He later earned his associate degree in Automotive Maintenance Technology at Ranken Technical College in St. Louis, Missouri, in 2018. PSR, ¶ 64. Kimble has expressed vocational interests in becoming a master automotive technician or pilot and has further indicated interest in vocational, occupational, and/or apprenticeship training in the Bureau of Prisons during any period of incarceration. PSR, ¶ 65.

Kimble most recently worked full time as an automotive technician for Frank Leta Acura of St. Louis, Missouri, from March 16, 2020, to June 26, 2020, but was let go due to a reduction in workforce. PSR, ¶ 70. Frank Leta Acura, however, has indicated it would consider re-employing Defendant. *Id.* Previously, Kimble was employed full time as an automotive technician by Dobbs Tire and Auto in St. Louis, Missouri, from July 30, 2019, to March 10, 2020. PSR, ¶ 71. Before this, Kimble was employed full time as an automotive technician by Midas of St. Louis, Missouri, from June 1, 2017, to June 1,

2019. PSR, ¶ 72. Defendant was employed at different times prior to these jobs as an automotive technician and a dishwasher. PSR, ¶ 73.

### IV.     Nature of the Offense

Defendant Kimble pleaded guilty to knowingly traveling across state lines from St. Louis, Missouri, to Springfield, Illinois, for the purpose of engaging in sexual actions with a 15-year-old minor.

### V.      Kimble's History and Characteristics Indicate That He Poses a Reduced Risk of Recidivism

United States Sentencing Commission data support the conclusion that Defendant Kimble poses a reduced risk of recidivism, as compared with other offenders, and suggest that a sentence variance that reduces Kimble's sentence of incarceration is appropriate in this case. *See e.g.,* United States Sentencing Comm'n, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines* 16 (May 2004), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf (hereinafter "Measuring Recidivism"). The criminal history measure of the guidelines estimates the likelihood of recidivism based on two offender characteristics: prior convictions and prior terms of incarceration. *See* USSG §4A1.1 The United States Sentencing Commission's 15-year report, however, concludes that the measure's predictive power would improve if it incorporated additional offender characteristics. *See Measuring Recidivism* at 16.

Recidivism rates decline consistently as the defendant's age increases. *Id.* at 12, 28. Offenders under 21 years of age recidivate at a rate of 35.5%. *Id.* at 28. In comparison, offenders with a criminal history category of I between the ages of 21 and 25

6

years old recidivate at a rate of 22.3%. *Id.* Even within category I, recidivism rates differ greatly between those with one criminal history point (22.5%) and those with zero (11.8%). *Id.* at 23. Defendant Kimble is currently 25 years old and has zero criminal history points. PSR at page 2, ¶ 47.

Educational attainment correlates with lower recidivism rates. *See Measuring Recidivism* at 12, 29. Criminal history category I offenders who have not graduated from high school recidivate at a rate of 21.3%. *Id.* at 29. Those who have graduated college recidivate at just 7.1%. Those who have some college recidivate at a rate of 13.9%. *Id.* Defendant Kimble earned his high school diploma from Fox High School in May, 2015, and earned his associate degree in Automotive Maintenance Technology at Ranken Technical College in St. Louis, Missouri, in 2018. PSR at ¶¶ 63, 64.

Additional United States Sentencing Commission data support the conclusion that, as a first offender with no prior contacts with the criminal justice system, Defendant Kimble poses a further reduced risk of recidivism, as compared with other category I offenders, and suggest that a sentencing variance that reduces Defendant Kimble's sentence of incarceration is appropriate in this case. *See e.g.*, United States Sentencing Comm'n, *Recidivism And The "First Offender"* (May 2004), *available at* http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (hereinafter *"First Offender Report"*); *United States v. Tomko*, 562 F.3d 558, 571 (3d Cir. 2009) (upholding a sentence of one year home detention, restitution, community service, and a fine for tax evasion instead of the Guideline's 12-18-month sentence recommendation because of defendant's negligible criminal history, employment record, community ties, and

extensive charitable works). The Guidelines deem "first offenders" generally less culpable and less likely to re-offend than all other offenders. *See First Offender Report* at 1. The Guidelines broadly define "first offenders" as offenders who have no prior convictions or incarcerations. *Id.*; *see also* USSG §§ 4A1.1; *See also* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules: Finding and Using the Philosophy of the Federal Sentencing Guidelines*, 40 Am. Crim. L. Rev. 19, 24 (2003). The Commission has recognized, however, that consideration of additional factors will better identify those first offenders who prove *least* culpable, *least* likely to re-offend, and therefore *most deserving* of the leniency recommended by 18 U.S.C. § 994(j); *First Offender Report* at 1. In an ongoing effort to do so, the Commission divided "first offenders" with no criminal history points into three categories: those with (A) no prior arrests, (B) prior arrests but no prior convictions, or (C) prior convictions counted under USSG § 4A1.2(c)(2) only. *Id.* at 5. It then collected and analyzed data about the characteristics of offenders in each of the three categories. *See id.* It concluded that:

> From both culpability and recidivism risk perspectives, group A offenders, with no prior arrests, most strongly meet the conceptual definition of the first offender category. Offenders in group A have had no recorded contact with the criminal justice system prior to their instant federal offense. Moreover, as indicated by their extremely low recidivism rate, 6.8%, they are easily the most empirically identifiable group of guideline federal offenders who are the least likely to re-offend.

*Id.* at 17. Defendant Kimble has no history of arrest prior to commission of the instant offense, so he falls within group A—first offenders who are least likely to reoffend. PSR, ¶¶ 45-48.

These factors indicate that Defendant Kimble poses a low risk of recidivism and, as such, is a good candidate to receive a reduced sentence or one that reduces any lengthy

term of incarceration because a lengthy sentence would not be necessary to achieve the purposes of sentencing.

## VI. Kimble's History of Concussions and Diagnosis with Anxiety Disorder Should Be Taken into Account in Determining a Minimally Sufficient Sentence

The Sentencing Guidelines specifically authorize a court to consider "the history and characteristics of the defendant" when determining whether a sentence is sufficient, but not greater than necessary, to comply with the purposes of § 3553(a). 18 U.S.C. § 3553(a)(1). This includes consideration of a defendant's mental and emotional condition. *See United States v. Almenas*, 553 F.3d 27, 37 (1st Cir. 2009) (affirming sentence where district court considered defendant's history and circumstances, including his physical and mental condition). The mental condition of the defendant is an established basis for granting a variance below the Sentencing Guidelines. *See United States v. Myers*, 503 F.3d 676, 687 (2007) (affirming district court's downward variance based on defendant's mental health struggles).

Here, Defendant has suffered from multiple concussions in his life and issues with depression and suicidal thoughts as a teenager. He was diagnosed with anxiety disorder and prescribed medication for that condition following his arrest and detention in this matter. Defendant Kimble's mental and emotional health difficulties merit consideration in determining an appropriate sentence in this matter and suggest that a sentence below the duly calculated guideline range of imprisonment is appropriate in this matter.

## VII. The Guidelines Range Calculated in the Presentence Report Is Not Justified, and, If Applied, Would Substantially Overstate Defendant's Culpability and Result in Unwarranted Disparity

Defendant Kimble has objected to the application in the PSR of a five (5) level

enhancement pursuant to USSG §4B 1.5(b)(1) that was applied contrary to the plea agreement and believes that enhancement is inapplicable in this case. To any extent that such an enhancement is applied, a downward variance is appropriate here to protect the integrity of the plea-bargaining process and to avoid unwarranted disparities.

A sentencing court may properly consider a downward sentencing adjustment "where findings as to uncharged relevant conduct made by the sentencing court based on a preponderance of the evidence substantially increase the defendant's sentence under the Sentencing Guidelines." *United States v. White*, 240 F.3d 127, 136 (2d Cir. 2001) (where D was convicted of selling large amounts of drugs near school and witnesses testified to numerous uncharged sales over long period, contrary to the view of the district court, court had authority to depart downward. *See also United States v. Cordoba-Murgas*, 233 F.3d 704, 709 (2d Cir.2000); *United States v. Gigante*, 94 F.3d 53, 56 (2d Cir.1996); *United States v. Quinn*, 472 F. Supp. 2d 104, 112 (D. Mass. 2007) (rejecting guideline range based on uncharged prior offenses where co-defendant's PSR did not include that same conduct and where stating that court is not required to follow the guideline's advice when "its acceptance would be unreasonable").

"'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *United States v. E.V.*, 500 F.3d 747, 752 (8th Cir. 2007) at 752 (quoting *Santobello v. New York*, 404 U.S. 257, 262). "Allowing the government to breach a promise that induced a guilty plea violates due process." *Santobello*, 404 U.S. 257. Further, "with respect to federal prosecutions, the courts' concerns run even wider than protection of the defendant's individual constitutional rights—to concerns for the

honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *United States v. Jensen*, 423 F.3d 851, 854 (8th Cir. 2005) (internal citation omitted).

In *United States v. E.V.*, 500 F.3d 747, 751 (8th Cir. 2007), "the parties agree[d] that none of the specific offense characteristics listed under Guideline Section 2D1.1(b) is applicable in this case," which encompassed subsection 2D1.1(b)(1), applying a two-level increase if a dangerous weapon was possessed during commission of the charged offense. The Government, nevertheless, put on evidence of the defendant's possession of a firearm, which the Eighth Circuit Court of Appeals found breached the plea agreement, holding that "the parties' specific agreement in this case that the offense characteristics of section 2D1.1(b) did not apply precluded the government from introducing evidence to the contrary, either as purported rebuttal evidence or pursuant to the more general agreement that the parties could seek departures from the applicable guideline range." *Id.* at 753. "The enforcement of the provision at issue entails an obligation to refrain from introducing evidence to the contrary; that the prosecutor expressly disavowed seeking the enhancement does not negate this obligation." *Id.* at 754 (citing *United States v. Boatner*, 966 F.2d 1575, 1579 (11th Cir.1992) (finding breach where government introduced drug-quantity evidence exceeding amount stipulated to despite prosecutor's statement to court that "the government will stick to its stipulation"). *See also United States v. Dicus*, 579 F. Supp. 2d 1142, 1152 (N.D. Iowa 2008).

Here, Defendant has discussed this matter with counsel for the Government and does not expect that the Government will take any action that would arguably breach the plea agreement. In the event that the enhancement were to be applied for any reason,

however, Defendant notes that similar considerations to those considered in the above-cited cases apply to the plea in this case. Counsel for both the Defendant and the Government engaged in the discovery and plea process for well over one year and, based upon the same, specifically excluded from the Plea Agreement the Enhancement set forth in Paragraph 40 of the PSR. The Probation Officer indicates within the body of Paragraph 40 this understanding that the parties did not agree to the Enhancement at issue.

The Defendant entered his plea of guilty in this matter based upon his good faith belief and reliance upon the representations of his counsel and the negotiations between his counsel and the Government. The inclusion of the Enhancement entirely "guts" the bargained-for consideration of the Plea Agreement by increasing the Defendant's adjusted Base Level Offense from a contemplated 25, with a corresponding advisory Guidelines range of 57-71 months of incarceration, to a Level 30, with a corresponding advisory Guidelines range of 97-121 months of incarceration, by function of the PSR writer's application of an enhancement whose application is not applicable or, at best, of dubious applicability in circumstances like these.

Failure to effectuate the terms and conditions of a plea agreement by applying the agreed upon guidelines calculations here, if such sentence is based on an enhancement that was specifically rejected by the Government, will have a severe and substantial "chilling effect" on the integrity of plea negotiations, which, in turn, will also have a consequential impact on judicial economy and efficiency.

In addition, Paragraph 12 of the PSR identifies a "Related Case" wherein this Honorable Court sentenced Defendant Jeffrey Sakurai to seventy (70) months of incarceration in the Federal Bureau of Prisons. Paragraph 27 of the PSR indicates that the

Government views Defendant Sakurai and Defendant Kimble as being equally culpable in the instant offense. However, Defendant Sakurai did not have the five (5) level Enhancement pursuant to USSG §4Bl.5(b)(l) applied to his Guidelines calculations. Undersigned counsel provided Probation with a copy of an investigative/law enforcement report reflecting that, to whatever extent the enhancement could be deemed to apply to Defendant Kimble, Defendant Sakurai should have had the Enhancement applied.

Undersigned counsel understands that Defendants' Sakurai and Kimble are not co-defendants. Nevertheless, the facts of both cases are intertwined, and the disparate treatment of these similarity situated Defendants (in which Defendant Sakurai' s conduct is substantially more egregious than that of Defendant Kimble) specifically cuts against the fundamental premise for the creation, inception and promulgation of the Guidelines that were designed to produce a degree of sentencing continuity. Consideration of the purposes of sentencing here suggests that, to whatever extent the five-level enhancement pursuant to USSG §4Bl.5(b)(l) can be applied to Defendant's Guidelines calculations, an equal or greater downward variance be applied to result in a sentence based on the range calculated by the terms of the plea agreement negotiated by the parties, then taking into account the other factors detailed in the preceding sections of this memorandum.

**VIII.   Conclusion**

For the foregoing reasons, Defendant Kimble respectfully suggests that a sentence of 50 months imprisonment be imposed in this matter to best serve the statutory purposes of sentencing.

Respectfully submitted,

ROSENBLUM, SCHWARTZ & FRY, PC

By:    */s/ Gregory Wittner*
        GREGORY N. WITTNER, #43278MO
        Attorney for Defendant
        120 S. Central Avenue, Suite 130
        Clayton, Missouri 63105
        (314) 862-4332/Facsimile (314) 354-8271
        Email:  gwittner@rsflawfirm.com

## CERTIFICATE OF SERVICE

By signature below, I hereby certify that on April 13, 2022, the foregoing was electronically filed with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Assistant United States Attorney Dianna R. Collins.

*/s/ Gregory N. Wittner*