To the Honorable Judge Pitlyk,

Thank you for the opportunity to share some thoughts on this matter with our son, Wesley. We have never been in this situation, neither has Wes, so we are learning as we go. We know it is hard for all of those involved, on both sides. But we are writing on our son's behalf.

We have known Wes for his entire life. Wes lived with us until the age of 19.

Wesley realizes and has taken responsibility for his actions. He voluntarily turned himself in to the St. Louis County Jail in August 2020 and has been in jail ever since as this process has unfolded.

While at the St Louis County Jail, Wes spent many weeks in solitary confinement in the early part of his jail time due to COVID protocols. He was confined in a small cell by himself for 23 hours per day for the majority of time he was at the jail in Clayton. He occasionally had a cell mate but much of the time was spent alone.

As may be imagined, the solitary confinement has taken a toll on his mental and physical health. According to an article in the American Academy of Psychiatry and the Law, isolation can be as distressing as physical torture. Wesley is the type of person who likes to stay busy which further exacerbates the potential mental effects of solitary confinement. We talk with Wes very frequently (almost daily for the first six months of his jail time) and have often wondered and worried about his mental state over the past almost two years.

The obvious, visible, impact is to his physical health. He weighed approximately 220 pounds when he surrendered to authorities in August 2020 but now weighs over 330 pounds. A recent exam in jail revealed that he has developed high blood pressure. We are very concerned that he has also developed diabetes while in jail but he has not requested to be tested for that disease.

Wesley loves working with his hands and figuring things out. From a little one playing with cars, building a new train track for his trains, or sitting for hours putting Legos together, he was always very curious and tried to figure out how to make things work. These traits are likely what led to him enjoy working on cars and putting himself through Ranken Technical College to become a mechanic.

Wes has a strong work ethic which is shown by that fact that he has always worked since he was around 15 years old - washing dishes, flipping burgers, standing on the corner in hot or cold weather holding an advertising sign, changing oil during college then on to mechanic work, Wesley always worked. He had a dry erase board in his apartment reminding him of his bills so that everything was paid on time. Living expenses consumed the majority of his income but he was proud he was living on his own and taking care of things. He had dreams of becoming a master mechanic so that he could save enough money to buy a home with a garage that he could use for mechanic work.

Wes would also help anyone who asked him to, even strangers. If your car had problems, he would help you fix it or give you some idea what the problem may be. If he stopped by after a long day of work and we asked a question about a problem with our car, he would immediately try to figure out what was wrong and take a look at it. He would run to the part store with you to make sure you got the right car part to get it fixed. Another example of his willingness to help others is the time he met a guy at a gas station that was down on his luck and didn't have a ride home. Wes of course helped him out and gave

him a ride even though he had just met him. The person later became Wesley's first roommate when he moved out of our house at age 19. Wes always helped people when he could, even if he didn't know you.

In his youth, Wesley kept busy with sports – the summer swim team, practicing Tae Kwon Do and eventually playing football. Wes was very good at football and he enjoyed playing the game. That abruptly ended when he had a severe concussion in his freshman year of high school. He was under the care of Dr Matt Bayes (a sports medicine doctor with special interest in concussion care) for a long period of time after the incident. He was on multiple medications and ordered to lay in a dark room with no stimulus for months so his brain could heal. Wes still experienced head-aches and other side effects more than a year after the event. After that he stopped playing sports and his grades in high school suffered greatly. His interest in mechanics compelled him to focus and do well at Ranken.

There are many great memories we have of Wes. From reading books to him from the moment we learned Denise was pregnant, feeling him respond as his dad read books to him each night throughout the pregnancy, to all of his funny sayings as he grew up. With each great memory comes hard and difficult times that, as a family, we must get through. This is by far the most difficult situation we have faced but we believe that Wesley has learned from his mistakes and will be a good and positive member of the community when he is released. Wesley has a good start due to being drug free from being in jail and has a good support system with his family to help keep him on the right path, yet this is something Wesley strives to do for himself as he never wants to be in this situation again.

Respectfully,

*Denise Kimble*

Jeff and Denise Kimble
314.629.2994

To the Honorable Judge Pitlyk,

I am writing a letter of support for my grandson, Wesley A. Kimble, who will be appearing in your court. Being his grandmother, I have known Wesley all of his life. Right from the beginning there has been a bond between us that has grown stronger and deeper through the years. Their family has always lived within a 4 hour drive from me so I have had the privilege of being with them many times through the years and have vacationed with the family also.

Wes has a very supportive and loving family. His parents have encouraged and supported Wes as a person, and also his interests/hobbies. Empathy and kindness were taught and modeled by his parents on a daily basis, not only in their own nuclear family, but for others. Wes has always been an engaging, outgoing, caring, and kind person. He knows and appreciates the value of family and his extended family members.

When Wes was young, he had an affinity for all things wheels and mechanical. He spent much time with his hot wheels cars, Thomas the Train set, and determining how things were connected and worked. He honed that interest through the years by reading, investigating, and eventually attending Rankin Technical College and earning a degree so he could work in the auto repair field and support himself.

Wes sought employment when he was 15 because he wanted a part time job. His first job was holding a business advertising sign outdoors in the winter. From there, he was employed part time through high school and while attending Rankin. After graduation, he actively sought employment and was hired by different auto businesses until he was laid off because of Covid.

Wes and I had many opportunities to spend time together, whether in family group settings or just the two of us. He would often engage me in conversations asking what I thought about a certain subject and give his thoughts. I always found Wes to be a deep thinker and sought information on numerous and a variety of topics. His preferences led more to non-fiction books and documentaries where he could learn a new idea or concept. He was always willing to try a new skill or task.

Wes is a young man that has just barely started living his adult life and actualizing his dreams and aspirations. I have been actively involved in Wes' life and will continue to be there for him and assist him in any way he needs or wants.

Thank you, Your Honor, for taking these thoughts into consideration as you deliberate on the appropriate sentence for my grandson, Wesley A. Kimble.

*Donna Acord*

Donna L. Acord
2631 Northwood Ave
Burlington, IA 52601
319.750.0706

To the Honorable Judge Pitlyk,

It is my understanding that the Court will accept for consideration letters testifying to the history and character of persons facing sentencing by the Court.

Accordingly, I wish to share my knowledge of, and experiences with, Wesley A Kimble. First, I wish to state a bit about who I am and my basis for interest in Wes' case. My name is Raymond H Coleman, I am 78 years of age, and a retired self employed businessman. I came to know Wesley and his family in 2009 through Wes' Grandmother and in the ensuing years became a close family friend, having been a visitor, house guest, participant in family gatherings and celebrations many times over the years. Becoming well acquainted with Wes, his siblings and his parents was my privilege.

The Kimble family is a quintessential American nuclear family. Excellent parents and always involved in supporting their children's education and extra curricular activities. They are an asset to the Community in all aspects of their family and occupational endeavors.

As for Wes in particular, he was a good student, played high school football and displayed high intelligence and could converse on a variety of topics. His football days ended after the misfortune of a concussion and both his parents and his Doctor recommended he discontinue that activity.

I am a lifelong automobile enthusiast and made my career in that field. Wes had a keen interest in mechanical matters and we had many conversations about the inner workings of automobiles. It was my privilege to share information with him and even gave Wes major automotive components for training aides. Wes always appreciated the opportunity to learn more. He subsequently attended Rankin Trade School to further his career ambitions.

My many interactions with Wes were always pleasant events. Even though Wes is a large young man, his demeanor was always friendly and good natured. I also know that he was an excellent employee, conscientious, punctual and willing to stay until the tasks were finished. I know these things both from observing him and having, on occasion, visited him at work and saw first hand his relationship with his employers.

So, it is from this perspective that I was shocked to learn that Wes found himself in such a legal nightmare as he has been for going in two years. The only thing I know about Wes that may have contributed to his situation, is that Wes has tended to befriend people who have had a much worse lot in life to endure than he has. Wes seems to be supportive of less fortunate young people and perhaps has been a bit naive about how their values may differ from his own and the potential pitfalls of that reality.

For a young man with Wesley's demonstrated potential for a useful and productive career, going to prison for an extended period is a severe hardship and major setback to overcome when he eventually returns to a free society.

I respectfully ask for your merciful deliberation in deciding Wesley's punishment.

*Raymond H Coleman*
Raymond H Coleman
217.430.1944